**Kathleen KIRKEBY, David Habiger, Martin Wishnatsky, and Timothy Lindgren, Appellants,**

v.

**Bruce FURNESS, in his official capacity as Mayor of the City of Fargo, Wayne Solberg, The Fargo City Commission, City of Fargo, Appellees.**

No. 94–3231.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1995.

Decided April 20, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied May 30, 1995.*

---

* McMillian, Loken, and Murphy, Circuit Judges, would grant the suggestion for rehearing en banc.

Walter M. Weber, Washington, DC, argued (Peter B. Crary, Fargo, ND, and Jay Alen Sekulow, Washington, DC, on the brief), for appellants.

Wayne O. Solberg, Fargo, ND, argued, for appellees.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In response to picketing by anti-abortion demonstrators, the city of Fargo, North Dakota adopted a revised ordinance restricting residential picketing. The issue is whether the district court erred in denying the demonstrators' motion to enjoin enforcement of this ordinance as an unconstitutional abridgement of their right to speak. We conclude that the motion should have been granted, and therefore reverse and remand the matter for further proceedings.

I.

The City of Fargo had an ordinance which prohibited "picketing the dwelling of any individual in the City of Fargo." Fargo Municipal Code, art. 10–0802 (1985). On February 1, 1993, Fargo revised the ordinance to prohibit all "targeted residential picketing," which includes: (1) carrying written material

within 200 feet of a dwelling which identifies the occupants of the dwelling by name, or (2) "verbalizing protests" within 200 feet of a dwelling which identify the occupants by name, occupation, or photograph. Fargo Municipal Code, arts. 10–0801, 10–0802. "Picketing" includes "standing, marching, sitting, lying, patrolling or otherwise maintaining a physical presence ... for the purpose of persuading the public or an occupant of such premises or to protest some action, attitude or belief." Fargo Municipal Code, art. 10–0801. (The city also made other revisions to the ordinance which are not under attack here.)

The new ordinance also forbids "picketing" in "restricted picketing zones." Fargo Municipal Code, art. 10–0804. Under this provision of the ordinance, after a review of previous picketing activity and after making certain findings listed in the ordinance, the Board of City Commissioners ("Board") may establish a restricted picketing zone in a neighborhood for a period of up to one year. After the year-long period has expired, a resident may petition the Board to reestablish the zone. The ordinance does not specify any limit on the size of such a zone.

The first picketing zone was established by resolution of the Board on May 10, 1993. The zone covered Edgewood Drive between 3rd Street North and 29th Avenue North, a street with twenty-seven residential lots. After the establishment of the first residential picketing zone, the demonstrators challenged the constitutionality of the ordinance and requested a preliminary injunction against its enforcement. The district court denied this motion in an order filed July 29, 1993.

The Board established a second residential picketing zone on July 19, 1993, covering Tenth Street South between Fifteenth Avenue South and Sixteenth Avenue South, a street with twenty-three residential lots. The demonstrators again moved for a preliminary injunction, and the City of Fargo sought summary judgment. In an order filed August 2, 1994, the district court denied the demonstrators' second motion for a preliminary injunction and granted the city's motion for summary judgment with respect to the sections of the ordinance restricting targeted residential picketing. The district court declined to grant summary judgment regarding the ordinance's establishment of restricted picketing zones because it had doubts about the constitutionality of the zones, yet took no action to enjoin them. We have jurisdiction over this appeal since the district court refused to enter the injunction that the protesters requested. *See* 28 U.S.C. § 1292(a)(1).

II.

■ The standard of review for the denial of a motion for preliminary injunction is abuse of discretion. *Frejlach v. Butler,* 573 F.2d 1026, 1027 (8th Cir.1978) (per curiam). A court considering a motion for preliminary injunction must consider (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc).

■ The district court weighed these considerations and concluded that the demonstrators were not entitled to a preliminary injunction. Despite the district court's careful factual findings, we have weighed these same considerations and have come to a contrary conclusion, primarily on legal grounds. We disagree with the district court mainly because we entertain grave doubts that the ordinance in question can pass constitutional muster. In particular, we find that the ordinance's 200–foot zone is almost certainly too restrictive of the right to speak freely in public. The issue is whether the ordinance is narrowly tailored to serve a significant governmental interest, leaving open alternative channels of communication. *Frisby v. Schultz,* 487 U.S. 474, 482, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988). In the two most pertinent Supreme Court decisions, the Court found that prohibiting picketing solely in front of a house was an acceptable limit on the right to speak, *Frisby,* 487 U.S. at 483, 108 S.Ct. at 2501–02, but that a 300–foot zone around a house was too restrictive. *Madsen v. Women's Health Center, Inc.,* —— U.S.

——, ——, 114 S.Ct. 2516, 2530, 129 L.Ed.2d 593 (1994). A recent Sixth Circuit case opined that "*Madsen ...* makes it clear that any linear extension beyond the area 'solely in front of a particular residence' is at best suspect, if not prohibited outright." *Vittitow v. City of Upper Arlington,* 43 F.3d 1100, 1105 (6th Cir.1995) (footnote omitted). We believe that this reading of *Madsen* is not obviously wrong and, indeed, has much to recommend it. The 200–foot zone here makes our case much closer to *Madsen* than to *Frisby,* and we therefore conclude that the protesters are likely to succeed on the merits of their challenge to the "targeted residential picketing" portions of the Fargo ordinance. We note that *Madsen* did not involve an ordinance, but an injunction, which the Supreme Court explicitly judged under a stricter standard; however, we still believe that under the combined authority of *Frisby* and *Madsen,* a 200–foot area may well be an impermissibly restrictive regulation of picketing as defined in the ordinance.

"[A] state statute should be deemed facially invalid only if (1) it is not readily subject to a narrowing construction by the state courts and (2) its deterrent effect on legitimate expression is both real and substantial." *United Food & Comm'l Workers Int'l Union v. IBP, Inc.,* 857 F.2d 422, 431 (8th Cir.1988) (citing *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975)). We have not been made aware that any North Dakota court has narrowed the scope of this ordinance, and we believe that the ordinance by its plain terms has a real and substantial effect on well-grounded First Amendment rights such as "[g]eneral marching through residential neighborhoods, or even walking a route in front of an entire block of houses." *Madsen,* —— U.S. at ——, 114 S.Ct. at 2530 (quoting *Frisby,* 487 U.S. at 483, 108 S.Ct. at 2502). The dissent recounts the district court's findings that some picketers have created disturbances of a substantial character on some occasions. These findings are beside the point, however, because we do not now have an occasion to decide whether an ordinance that was narrowly drawn to prohibit these kinds of disturbances would be constitutional. We emphasize that that question is not before us. The question before us is whether the present ordinance is likely to be held overbroad, and we have been at some pains to indicate why we believe that it is.

■ Although we think that plaintiff's chances of ultimate success are so large as to overwhelm any possible counterweight that the other *Dataphase* considerations might provide, we nevertheless think that those considerations also counsel that the protesters should prevail on their motion. Since the protesters' right to speak has probably been violated, they will likely suffer an irreparable injury if the injunction does not issue. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (plurality opinion). Similarly, the public interest, as reflected in the principles of the First Amendment, is served by free expression on issues of public concern. *See Frisby,* 487 U.S. at 479, 108 S.Ct. at 2499 ("The antipicketing ordinance operates at the core of the First Amendment by prohibiting appellees from engaging in picketing on an issue of public concern."). The balance of equities also favors constitutionally-protected freedom of expression over the state's interest in maintaining an insulation of privacy around a particular individual's residence when the perimeter of such appears to have been drawn too expansively. Having weighed the *Dataphase* considerations, we believe that, under the circumstances, the district court abused its discretion in denying the request for preliminary relief. We emphasize that we have not made a final decision in this case on the merits, and have considered the merits only to the extent that the *Dataphase* considerations have compelled us to do so. In weighing these considerations we cannot ignore, as the dissent urges us to do, the overbroad and therefore unconstitutional appearance of the ordinance.

■ For the reasons outlined above, we conclude that the zone picketing provisions are of even more dubious constitutional validity. The ordinance on its face provides no limits on the city's power to declare entire city blocks off-limits to certain kinds of per-

suasive speech. As applied, article 10–0804 has been used to create neighborhood-wide zones where certain constitutional rights to speech have been suspended. We believe that such zones almost certainly "sweep more broadly than necessary to accomplish the permissible goals" of the ordinance. *Madsen*, ―― U.S. at ――, 114 S.Ct. at 2530. Accordingly, we find that the protesters are quite likely to succeed in challenging the city's use of zones to regulate speech. As a result, the protesters are entitled to some form of preliminary relief.

### III.

For the foregoing reasons, the judgment of the district court is reversed and the case remanded for further proceedings.

JOHN R. GIBSON, Senior Circuit Judge, dissenting.

I respectfully dissent.

The majority errs in ordering preliminary injunctive relief with respect to targeted residential picketing, about which the district court has made careful findings, and with respect to the residential picketing zones, on which the district court expressly reserved ruling pending further exploration of the subject.

The Supreme Court last visited residential picketing in *Madsen v. Women's Health Center, Inc.*, ―― U.S. ――, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994). The Court there distinguished between statutes or ordinances, and injunctive orders, and made clear that a content-neutral, generally-applicable statute or ordinance, as opposed to an injunctive order, should be considered under the constitutional standard set forth in *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753–54, 105 L.Ed.2d 661 (1989). *Madsen*, ―― U.S. at ――――――, 114 S.Ct. at 2523–25 (also citing *Frisby v. Schultz*, 487 U.S. 474, 480, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988)). Under these cases, the court should determine whether the time, place and manner regulations are narrowly tailored to serve a significant governmental interest.

In considering the targeted residential picketing, the district court correctly applied the analysis required by *Madsen* and *Frisby* and found that the Fargo ordinance was content and viewpoint neutral. Further, the district court was satisfied that the ordinance's 200 feet restriction on focused protest was a proper exercise of the City Commission's legislative discretion, and that the protection of residential privacy was a significant governmental interest. The district court then determined that the ordinance narrowly defined the area within which focused protest is prohibited and was narrowly tailored to protect only unwilling recipients of the communication. The court concluded that the Fargo ordinance prohibited only targeted residential picketing and clearly defined such picketing. Finally, the court found the ordinance's complete prohibition necessary where the picketing is narrowly directed at the household and not the public.

The district court held that the ordinance prohibits speech primarily directed at those presumptively unreceptive to it, and the City has a substantial and justifiable interest in banning such speech. The court today does not suggest that the district court's findings are clearly erroneous, nor that such specific findings supporting the ordinance's restrictions are an abuse of discretion. In my view, the findings of the district court fully support its ruling with respect to targeted residential picketing, and I think this court errs grievously and ignores the strong policy interest in protecting residential privacy by ordering that the Fargo ordinance be preliminarily enjoined.

The district court expressed dissatisfaction with the scope of the residential picketing zone ordinance, but wished to explore the issue further. It must be recognized that the district court made findings of the impact of picketing on residents of the neighborhood, who are not direct objects of the picketing, and pointed to neighborhood surveys conducted by the Fargo Police Department which showed that the picketing annoyed and harassed an overwhelming majority of residents, and negatively impacted on their sense of neighborhood well-being, tranquility, privacy, and enjoyment of their homes. Many of the residents would not allow children to play outside when the picketers were pres-

ent, in part, because they found the graphic signs offensive and felt children should not be exposed to such materials. After these surveys, the City Commission established the residential zone by a 3–2 vote. While at first blush the scope of the zone appears to extend far beyond the target of the picketing, the district court found that the privacy interests of neighborhood residents, as well as the targets of the picketing, were substantially affected by the picketing. In spite of these findings, without final action by the district court and without any effort to engage in a *Dataphase* analysis, this court today orders injunctive relief.

The order of the district court did no more than deny the Kirkeby group's motion for summary judgment and motion for preliminary injunction and grant their motion for leave to file a second supplemental complaint. The court's action today is simply unsupported and violates the teaching of *Mayo v. Lakeland Highlands Canning Co.,* 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940), by ruling on a constitutional issue when the only issue on appeal is the propriety of a preliminary injunction pending further action in the case. *See Missouri–Kansas–Texas R.R. Co. v. Randolph,* 182 F.2d 996, 999–1000 (8th Cir.1950). The court directs preliminary relief in spite of the fact that the district court has not yet made its final decisions on the merits of these issues. I would do no more than order that the district court expedite further consideration of the residential picketing zones and consider the issue when the record has been fully developed. We should leave the situation in place until we have final rulings from the district court.