JOHN R. GIBSON, Circuit Judge,
dissenting.
I respectfully dissent.
The court today holds that the ordinance is content-based, and that the restriction is not justified by a compelling state interest. I believe the court should simply hold as much, and go no further. The court, however, decides that it must continue to analyze the *663 remainder of the ordinance, concluding that even if the definition of picketing is content-neutral, the ordinance is unconstitutional. This reduces the remainder of the court’s opinion to dictum, with no binding force. I will comment briefly on these issues.
This case has taken an extremely curious path. In denying the preliminary injunction, the district court made specific findings of fact concerning the targeted residential picketing provisions of the ordinance and expressly reserved ruling pending further exploration on the residential picketing zones. When the court heard the appeal on the preliminary injunction, it stated that “we entertain grave doubts” as to whether the ordinance “can pass constitutional muster.” Kirkeby v. Furness, 52 F.3d 772, 774 (8th Cir.1995). We concluded that the “200-foot zone is almost certainly too restrictive of the right to speak freely in public.” Id. We thought that the “200-foot area may well be an impermissibly restrictive regulation of picketing-” Id. at 775. Applying the considerations set forth in Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981) (en banc), we concluded that “the protesters’ right to speak has probably been violated, [and] they will likely suffer an irreparable injury,” without the issuance of a preliminary injunction. 52 F.3d at 775. We emphasized that we had not made a final decision on the merits, but “have considered the merits only to the extent that the Dataphase considerations have compelled us to do so.” Id. I dissented from the court’s opinion in Kirkeby I.
The district court accepted the signals taken from our tentative conclusions, and granted a permanent injunction. The district court did so without making specific findings of fact or conclusions of law. Thus, we are faced with the entry of a permanent injunction running contrary to the district court’s original findings and based on this court’s most tentative and general comments. The district court’s original findings with respect to the picketing provisions have not been set aside or reversed. In light of this court’s discussion in Kirkeby I, the district court simply abandoned its further exploration of the residential picketing zones provisions. Thus, a permanent injunction has simply been floated in the air, without a tether of supporting factual findings.
I entertain some question as to whether under the analysis in Carey v. Brown, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), and R.A.V. v. City of St. Paul, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), the ordinance is content-based. Although the ordinance defines picketing to include conduct for the purpose of persuading the public or protesting some action, the definition is a generic one and does not concern specific subjects or issues. Cf. Carey, 447 U.S. at 460, 100 S.Ct. at 2289-90 (statute distinguished labor picketing from other picketing); R.A.V., 505 U.S. at 391, 112 S.Ct. at 2547-48 (ordinance distinguished certain conduct directed at race, color, creed, religion or gender).
Furthermore, I believe that the court’s holding that the residential privacy interest at issue here is not compelling may be premature. The court cites Carey v. Brown, 447 U.S. 455, 465, 100 S.Ct. 2286, 2292-93, 65 L.Ed.2d 263 (1980), for its position that residential privacy does not constitute a compelling state interest. The appellant in Carey argued that the Court should uphold a content-based residential picketing statute because the statute furthered the State’s compelling interest of ensuring privacy in the home. Id. at 465,100 S.Ct. at 2292-93. The statute barred picketing of residences, but exempted “the peaceful picketing of a place of employment involved in a labor dispute.” Id. at 457, 100 S.Ct. at 2288. The Court declined to decide whether the State’s interest in residential privacy constituted a compelling interest because it concluded that the State’s asserted interest of protecting residential privacy was not served by the statute. Id. at 464-65, 100 S.Ct. at 2292-93. The ordinance neither distinguished among various sorts of nonlabor picketing on the basis of the harms inflicted on residential privacy nor explained how peaceful labor picketing is less disruptive of residential privacy than peaceful picketing on issues of broader social concern. Id. at 465, 100 S.Ct. at 2292-93.
The Court has never stated that residential privacy does not constitute a compelling *664 interest. Carey did not decide the question, and the Court has, many times, emphasized “the unique nature of the home, ‘the last citadel of the tired, the weary, and the sick.’ ” Frisby v. Schultz, 487 U.S. 474, 484, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420 (1988) (quoting Gregory v. City of Chicago, 394 U.S. 111, 125, 89 S.Ct. 946, 954, 22 L.Ed.2d 134 (1969) (Black, J., concurring)). “ ‘The State’s interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.’ ” Id. (quoting Carey, 447 U.S. at 471, 100 S.Ct. at 2296).
As the Supreme Court recognized in Frisby, there is a special part of the residential privacy interest accorded to “unwilling listeners ... within their own homes.” 487 U.S. at 485, 108 S.Ct. at 2503. After discussing the consequences of targeted residential picketing in Frisby, the Court stated: “[W]e have repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom.” Id. On several occasions, the Court has held that the government may protect the freedom of individuals to avoid unwanted speech in their own homes, upholding the rights of the “unwilling listener” over the First Amendment rights of others. See, e.g., FCC v. Pacifica Found., 438 U.S. 726, 748-49, 98 S.Ct. 3026, 3039-40, 57 L.Ed.2d 1073 (1978) (offensive radio broadcasts); id. at 759-60, 98 S.Ct. at 3045-46 (Powell J., concurring in part and concurring in the judgment) (same); Rowan v. United States Post Office Dep’t., 397 U.S. 728, 737, 90 S.Ct. 1484, 1490-91, 25 L.Ed.2d 736 (1970) (offensive mailings); Kovacs v. Cooper, 336 U.S. 77, 86-87, 69 S.Ct. 448, 453-54, 93 L.Ed. 513 (1949) (plurality opinion) (sound trucks).
In the privacy of the home, “[an] individual’s right to be left alone plainly outweighs the First Amendment rights of an intruder.” Pacifica Found., 438 U.S. at 748, 98 S.Ct. at 3039-40 (citing Rowan, 397 U.S. at 737, 90 S.Ct. at 1490-91). The Court further explained this interest in Kovacs:
The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself.
336 U.S. at 88, 69 S.Ct. at 454. Cf. Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943) (invalidating ban on door-to-door solicitation when the homeowner can protect himself from the intrusion by an appropriate sign that he does not want to be disturbed).
In essence, the court today holds that the protesters’ First Amendment rights trump the rights of individuals to avoid unwanted speech in their homes. This directly conflicts with the teaching, particularly of Fris-by, concerning the State’s interest in protecting the well-being, tranquility, and privacy of the home. In its analysis, the court today simply gives little or no weight to the privacy interests of the besieged homeowners, and allows them to be trampled by the speech of the protesters despite the Supreme Court’s instruction that targeted residential picketing is not accorded as much First Amendment protection as other forms of communication. The Court reached this conclusion because residential picketers “do not seek to disseminate a message to the general public, but to intrude upon the targeted resident ... in an especially offensive way.” Frisby, 487 U.S. at 486,108 S.Ct. at 2503.
I also disagree with the court’s unduly restrictive reading of Frisby and Madsen v. Women’s Health Center, Inc., — U.S. —, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994). Madsen struck down a portion of an injunction prohibiting picketing, demonstrating, or using sound amplification equipment within 300 feet of the residences of clinic staff. — U.S. at —, 114 S.Ct. at 2529-30. Madsen, however, also held constitutional a thirty-six foot buffer zone around the clinic’s entrances and exits. Id. at —, 114 S.Ct. at 2527. Madsen thus recognizes that the protected zone may extend beyond the property lines of the building in question. Indeed, in striking down the 300-foot zone, the court foresaw that “a limitation on the time, duration of picketing, and number of pickets outside a smaller zone could have accomplished the desired result.” Id. at —, 114 S.Ct. at *665 2530. Although Madsen concluded that the 300-foot zone was too large, it certainly did not define the boundaries of the restricted area. Madsen also differs from this case in three other important ways. First, Madsen involved an injunction, which is subject to a more rigorous degree of scrutiny. — U.S. at —-—, 114 S.Ct. at 2524-25. Second, Madsen involved different interests: ensuring access to a clinic and ensuring the health and well-being of patients at a clinic. Id. at —-—, 114 S.Ct. at 2527-28. This case involves the substantial interest of protecting the peace and tranquility of the home and the protection of the unwilling listener in his own home. See Frisby, 487 U.S — at 484-85, 108 S.Ct. at 2502-03. Third, the “zone” here is not nearly as large as that in Madsen, nor does it curtail as much speech. Madsen prohibited all picketing or demonstrating within 300 feet of the residences of clinic staff. — U.S. at —, 114 S.Ct. at 2529. The zone at issue here only prohibits the identification of an occupant within 200 feet of a residence. The 200 foot zone is smaller and does not prohibit all picketing or demonstrating — only picketing which identifies an occupant within two hundred feet of the occupant’s home.[2]
I also disagree with the court’s conclusion that the two-hundred foot area -within which speech is curtailed is too large.[3] Although the Court in Frisby construed the ordinance to prohibit only “focused picketing taking place solely in front of a particular residence,” 487 U.S. at 483, 108 S.Ct. at 2502, I do not believe this language defined the parameters of targeted picketing. I disagree with the court today that we may only restrict residential picketing within a three-house zone. In recent days, this court approved an ordinance that restricts picketing in front of a targeted residence, as well as the residences immediately adjacent thereto. Douglas v. Brownell, 88 F.3d 1511 (8th Cir.1996). We concluded that the Court in Fris-by focused on the impact the ban had on protected activity, not on the size of the prohibited zone. Id. at 1519-20. We acknowledged the direct relationship between the size of the zone and the impact on speech, but concluded we were not required to strike down an ordinance simply because the zone extends beyond the area solely in front of the targeted residence. Id. at 1520. We did not define the outer limits of a restricted picketing zone, but we reiterated that Frisby requires us to ensure that the ordinance impacts protected speech no more than necessary to eliminate the evil it seeks to remedy. Id. (citing Frisby, 487 U.S. at 483-88, 108 S.Ct. at 2501-04). Such an inquiry requires a close examination of the record.
The record in Douglas, like the record in this case, shows the numerous complaints made by neighbors of the targeted resident. See id. These records are different from that in Frisby in which the pieketers congregated only in front of the targeted physician’s home. 487 U.S. at 476, 108 S.Ct. at 2498. There is no question that the significant residential privacy interests described in Frisby carry over to the nearby neighbors. The neighbors have, at least, an interest in privacy equal to the targeted resident. The neighbors are entirely innocent bystanders, and are subject to the proximal fallout from the picketing directed at the true target of the picketing. It is entirely fortuitous that the neighbors are subject to the picketing. The pieketers, of course, seek to directly influence the targeted resident. The pieket-ers subject the neighbors to picketing in an effort to have the neighbors’ voice their displeasure and also indirectly influence the tar *666 geted resident. As the findings from the preliminary injunction hearing demonstrate, neighbors of the targeted residents made numerous complaints about the picketing.
The district court made findings about the impact the picketing had on residents of the neighborhood who were not the targets of the picketing. Many of the residents would not allow children to play outside when the pieketers were present, in part, because they found the graphic signs offensive and felt children should not be exposed to such materials. Results of neighborhood surveys conducted by the Fargo Police Department showed that an overwhelming majority of residents felt the picketing was annoying and harassing, and negatively impacted their sense of neighborhood well-being, tranquility, privacy, and the enjoyment of their homes. The 200-foot zone takes into consideration the substantial interests of these neighbors and does so in an area less than that forbidden by Madsen. — U.S. at —, 114 S.Ct. at 2529-30. As a practical matter, the 200-foot zone covers the neighboring house, and possibly the house beyond that. The ordinance does not prohibit general marching through the neighborhood, it only prohibits the targeted picketing of an individual within 200 feet of that person’s home. Considering the specific and careful findings made by the council before adopting the ordinance, as well as the findings of the district court, I believe that the city adopted a reasonable balance between the privacy interests of the neighborhood residents and the First Amendment interests of the pieketers.
With respect to the restricted picketing zone, I believe that the zone which bans picketing in front of the targeted residence and for 150 feet on either side of the targeted resident’s lot, is sustainable under the authority of Frisby, Madsen, and Douglas.[4], Considering the particular lots in question, the zone covers, at most, two houses on each side of the targeted residence. The zone is, in reality, much smaller than that in Madsen because the zone here covers only the targeted residence plus an adjacent 150 feet. The zone in Madsen covered an area 300 feet in any direction. — U.S. at —, 114 S.Ct. at 2522. The findings surrounding the entry of the preliminary injunction specify the impact the picketing had on these nearby residences. The court today does no more than say that the speech free zone “is simply too large,” totally ignoring the facts in the record. I think this conclusionary approach to a significant constitutional issue is too broad and too vague in treating a serious and substantial concern to the residents of that area.
Finally, I see no constitutional infirmity with allowing the Board of City Commissioners to establish a Restricted Picketing Zone upon an application of a resident. I simply point out that before the Commissioners may authorize a restricted picketing zone, an applicant must satisfy significant procedural requirements. I think we omust accept counsel for Fargo’s assurances that the Board will establish such a zone only if the picketing interferes with residential privacy and tranquility.

. Although the court today does not cite Vittitow v. City of Upper Arlington, 43 F.3d 1100 (6th Cir.), cert. denied, — U.S. —, 115 S.Ct. 2276, 132 L.Ed.2d 280 (1995), it relied on Vittitow in denying the preliminary injunction, and much of the court's reasoning today appears to follow Vittitow. I am more persuaded, however, by Judge Martin's dissent in that case. After analyzing Frisby and Madsen, Judge Martin concluded that a three-house zone was "no larger than necessary to prevent the targeted homeowner and his family from being captives and to protect their other residential privacy interests." Id. at 1111.

. The court does not discuss the provision of the ordinance prohibiting pieketers from remaining within seventy-five feet of a dwelling for longer than five minutes. I believe this provision is easily sustainable under the combined authorities of Frisby, Madsen, and Douglas.

. I have no quarrel with the court’s conclusion that the dispute about the restricted picketing zone is not moot.