# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2147

_____

| | |
|---|---|
| Chris Veneklase, Paul B. Mehl, Darold Larson, Nancy Emmel, Jessica Uchtman, | * <br> * <br> * <br> * |
| Plaintiffs - Appellees, | * |
| v. | * Appeal from the United States <br> * District Court for the District <br> * of North Dakota. |
| City of Fargo, | * |
| | * [PUBLISHED] |
| Defendant - Appellant, | * |
| | * |
| David Eugene Todd, Officer, City of Fargo Police Department, Jon Holman, Wayne Jorgenson, | * <br> * <br> * |
| | * |
| Defendants. | * |

_____

Submitted:  May 13, 1999
Initially Filed:  August 30, 1999
Opinion Vacated and Rehearing Granted:  September 28, 1999
Refiled as Modified:  * December 30, 1999

_____

*Appellees, Chris Veneklase, Paul B. Mehl, Darold Larson, Nancy Emmel and Jessica Uchtman, have filed a petition for rehearing with a suggestion for rehearing en banc.  They assert in their petition that the rule of stare decisis compels this court to affirm the district court due to the decision in Kirkeby v. Furness, 92 F.3d 655 (8th Cir. 1996) ("Kirkeby II"); that the distinction drawn by this panel opinion initially filed on August 30, 1999, is invalid; and that, among other things, the Fargo picketing ordinance is facially unconstitutional for reasons given in Kirkeby II. In essence, Appellees assert that the principal issues in this appeal are not governed by Frisby v. Schultz, 487 U.S. 474 (1988) but are governed by Kirkeby II.  Therefore, Appellees argue, we

_____

Before McMILLIAN, BRIGHT, and FAGG, Circuit Judges.

_____

PER CURIAM.

The City of Fargo ("Fargo") appeals from a summary judgment decision holding Fargo's 1985 residential picketing ordinance unconstitutional on its face; a jury award of damages in the amount of $2,431; and an award of attorneys' fees against Fargo. We conclude that the Fargo 1985 residential picketing ordinance constitutes a constitutional, content-neutral regulation of free speech enacted to protect the privacy of Fargo's residents in their homes. We, therefore, reverse and remand for entry of judgment dismissing the action.

## I. BACKGROUND

_____

should affirm, or at least remand for a new trial.

This panel granted a rehearing to reconsider whether we are bound to affirm the district court's determination that the Fargo ordinance is unconstitutional based on Kirkeby II. This precise question of whether the Fargo picketing ordinance can be properly distinguished from that in Kirkeby v. Furness, 52 F.3d 772 (8th Cir. 1995) ("Kirkeby I") and Kirkeby II had not been previously briefed by the parties; that issue first surfaced at oral argument. The panel believed it proper under those circumstances to grant the petition for rehearing before the panel so that we could reconsider the issue upon written arguments in the petition and upon appellant's response.

Having reconsidered the matter, we now re-adopt and restate the prior opinion of the panel, and, in addition, further comment on the panel's analysis in distinguishing the ordinance in Kirkeby II from the Fargo ordinance in this case. We also comment on other issues raised in the petition for rehearing.

The additional commentary as Part III immediately precedes the conclusion of our opinion on the final page.

-2-

This case has an extensive, almost eight-year history. In Fargo, North Dakota, on October 10, 1991, at approximately 10:00 p.m., activists picketed the home of an abortion clinic administrator and one or two houses on either side of her home. The Fargo Police Department received a complaint about the residential picketing. Fargo police officers advised the picketers that their conduct violated Fargo's then applicable residential picketing ordinance.

Fargo's ordinance, enacted in 1985, reads as follows:

> 10-1201. Definitions. --For purposes of this article, certain words and phrases used herein are defined as follows:
>
> A. "Dwelling" means any structure or building, or dwelling unit within a building, which is used as a place of residence.
>
> B. "Picketing" means the practice of standing, marching, or patrolling by one or more persons inside of, in front, or about any premises for the purpose of persuading an occupant of such premises or to protest some action, attitude or belief.
>
> 10-1202. Picketing of dwellings prohibited. --No person shall engage in picketing the dwelling of any individual in the City of Fargo.

Jt. App. at 2.[1]

After the picketers refused to leave the scene, the Fargo police arrested the picketers and charged them with violating the ordinance. The Fargo police transported the plaintiffs to the Cass County Jail and held them overnight.[2] The Fargo police detained plaintiff Uchtman, a minor at the time of her arrest, for only a few hours and

---

[1]The ordinance in question here was subsequently amended by the Fargo City Council on February 1, 1993.

[2]The picketers would have been released that night if they had paid a $50 bond.

released her to the custody of her parents. Fargo filed charges against plaintiffs Veneklase, Mehl, Larson and Emmel for violating the residential picketing ordinance. On February 18, 1992, Cass County Judge Frank L. Racek dismissed the charges against plaintiffs, deciding that the ordinance was constitutional on its face but unconstitutional as applied to the plaintiffs on October 10, 1991.

Plaintiffs subsequently filed this action, pursuant to 42 U.S.C. § 1983, against Fargo, Officer David Todd, Officer Jim Schalesky, Lieutenant Jon Holman, and Sergeant Wayne Jorgenson seeking redress for their arrest and incarceration. On February 17, 1995, a Magistrate Judge[3] denied the individual police officers' claim of qualified immunity. The district court concluded that the officers' conduct was not "objectively reasonable" in light of clearly established law. The district court also concluded that Fargo failed to train its officers properly and, as a result, was "deliberately indifferent" to the rights of the picketers and liable for damages as a matter of law. Veneklase v. City of Fargo, 904 F. Supp. 1038, 1058 (D.N.D. 1995). In addition, the district court concluded that the ordinance did not violate the constitution on its face because the ordinance constituted a valid content-neutral regulation. Id. at 1044-48. Fargo and the police officers appealed to this court from the interlocutory order. We reversed the denial of qualified immunity and held that the interlocutory appeal on the issue of municipal liability was not properly before the court. Veneklase v. City of Fargo, 78 F.3d 1264, 1270 (8th Cir. 1996) ("Veneklase I"). We then remanded the case to the district court for further proceedings against Fargo. Id.

On April 10, 1997, the district court determined that Fargo was liable as a matter of law and again granted summary judgment in favor of the plaintiffs. The district court concluded that the ordinance was unconstitutional as a content-based restriction on free

_____

[3]A United States Magistrate Judge for the District of North Dakota presided with the consent of the parties. See 28 U.S.C. § 636(c).

speech. The district court then referred the issue of damages to a jury for a trial. That trial, held in August 1997, resulted in damages against Fargo in favor of the five plaintiffs in the total sum of $2,431. On March 31, 1998, the district court awarded attorneys' fees and costs against Fargo in excess of $52,000. Fargo timely appeals.

## II. DISCUSSION

Fargo argues that the district court erred when it held that the definition of "picketing" in Fargo's 1985 residential picketing ordinance failed the content-based speech test, and it further asserts that the ordinance is valid on its face under the First Amendment of the Constitution. We agree with these contentions. The Fargo ordinance constitutes a valid content-neutral regulation of speech under the First Amendment.

The residential streets of Fargo comprise traditional public fora and regulations of residential picketing are thus governed by the stringent standards established by the Supreme Court for limitations on free speech in public fora. See Frisby v. Schultz, 487 U.S. 474, 481 (1988). The Court articulated these standards in Frisby:

> In these quintessential public for[a], the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end . . . . The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

Id. (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)).

To determine content neutrality in a speech regulation, we must decide "whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys." Turner Broad. Sys., Inc. v. F.C.C., 512 U.S. 622, 642 (1994) (alteration in original) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)). "The government may not regulate [speech] based on hostility – or favoritism – towards the underlying message expressed." Turner, 512 U.S. at 642 (alteration in original) (quoting R.A.V. v. St. Paul, 505 U.S. 377, 386 (1992)). Content-based ordinances "by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed . . . ." Turner, 512 U.S. at 643. Content-neutral ordinances, for the most part, "confer benefits or impose burdens on speech without reference to the ideas or views expressed . . . ." Id.

Fargo maintains that this case is governed by the Supreme Court's decision in Frisby. In 1988, the Court held that an ordinance in Brookfield, Wisconsin, worded almost identically to the Fargo residential picketing ordinance, was facially constitutional. See Frisby v. Schultz, 487 U.S. 474 (1988). The Brookfield ordinance made it "unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the Town of Brookfield." Id. at 477. The Supreme Court deferred to the lower federal court's interpretation that the ordinance was content neutral. The Court concluded that the ordinance preserved ample alternative means of communication after interpreting the ban in the ordinance to restrict only "focused picketing taking place solely in front of a particular residence . . . ." Id. at 483. The Court further concluded that the ordinance served the significant government interest of protecting residential privacy. Id. at 484. The Court decided that the town narrowly tailored the focused picketing ban to address only the resident "trapped within the home." Id. at 487-88. The only substantive difference between the ordinance in Frisby and the 1985 Fargo ordinance is that Fargo added definitions to clarify the ordinance.

-6-

On its face, the ordinance's definition of picketing does not burden speech "because of disagreement with the message it conveys." See Ward, 491 U.S. at 791. Fargo did not prohibit picketing by activists opposed to abortion because of their message. Instead, Fargo prohibited the conduct of all picketing directed at a particular occupant in order to protect the tranquility and privacy of the home. Fargo's purposes for enactment of the ordinance do not in any way relate to the content of the expression. In other words, any picketing in front of a person's home would violate that resident's privacy, even if the resident happened to agree with the message. Any message of any kind can constitute picketing when directed at a particular occupant of a home. The circumstances relating to targeted picketing of an individual's home and the invasion in that way of an individual's peace and tranquility is entirely different than picketing on a public street, road or park where the message is directed to the public at large. "The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ward, 491 U.S. at 791.

The picketers argue that this case is controlled by Kirkeby v. Furness, 92 F.3d 655 (8th Cir. 1996) ("Kirkeby II"). In Kirkeby II, this court concluded that the picketing definition in the later 1993 Fargo residential picketing ordinance was content based. The 1993 ordinance defined "picketing" as "standing, marching, sitting, lying, patrolling or otherwise maintaining a physical presence inside of, in front, or about any premises for the purpose of persuading the public or an occupant of such premises or to protest some action, attitude or belief." Kirkeby II, 92 F.3d at 659 (quoting Fargo Municipal Code, art. 10-0801(2)) (emphasis added). However, as the plaintiffs acknowledge, the 1993 ordinance in Kirkeby II "is more complicated because of its

effort to define and regulate 'targeted' residential picketing . . . ."[4]  Veneklase Br. at 13 n.5.

The picketing definition in this residential picketing ordinance differs in a significant respect from the 1993 ordinance.  This ordinance limits picketing "for the purpose of persuading an occupant" while the 1993 ordinance limits picketing "for the purpose of persuading the public or an occupant."  The inclusion of "the public" in the 1993 ordinance strikes at the heart of First Amendment protections.  On the other hand, the 1985 ordinance focuses solely upon "an occupant" of the home and the importance of privacy in the home which underlies the holding in Frisby.  Specifically, the Supreme Court stated:

> [T]he picketing is narrowly directed at the household, not the public.  The type of picketers banned by the Brookfield ordinance generally do not seek to disseminate a message to the general public, but to intrude upon the targeted resident, and to do so in an especially offensive way.  Moreover, even if some such picketers have a broader communicative purpose, their activity nonetheless inherently and offensively intrudes on residential privacy.  The devastating effect of targeted picketing on the quiet enjoyment of the home is beyond doubt . . . .

---

[4]

The [1993] ordinance, as amended, prohibits "targeted residential picketing."  Fargo Municipal Code, art. 10-0802.  Targeted residential picketing is defined as picketing that identifies an occupant (either orally or in writing) within two hundred feet of a dwelling, blocking access to a dwelling, or maintaining a presence within seventy-five feet of a dwelling for longer than five minutes at a time.  Fargo Municipal Code, art. 10-0801(4).  The ordinance also gives the Board of City Commissioners the authority to declare, at the request of a complaining resident, the resident's block a "Restricted Picketing Zone" in which picketing may be limited or prohibited outright.  Fargo Municipal Code, art. 10-0804.

Kirkeby II, 92 F.3d at 658.

<u>Frisby</u>, 487 U.S. at 486 (emphasis added).

We, therefore, reject the picketers' contention that <u>Kirkeby II</u> controls this court's determination whether Fargo's 1985 residential picketing ordinance is a constitutional regulation. The different focus in <u>Kirkeby II</u> on picketing the public underlies the court's ruling that the ordinance in that case did not operate in a content-neutral environment. As explained above, the ordinance in this case is a content-neutral regulation enacted to protect the sanctity of the home.[5] This purpose does not relate to the content of the message and thus directs a conclusion that the ordinance constitutes a content-neutral regulation. See <u>Ward</u>, 491 at 791.

The Court's decision in <u>Frisby</u> compels the determination that Fargo's picketing ordinance satisfies the test for a content-neutral restriction. Fargo's purpose of protecting residential privacy clearly constitutes a significant government interest. "The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." <u>Frisby</u>, 487 U.S. at 484 (quoting <u>Carey</u>, 447 U.S. at 471). Fargo's ordinance prohibits only focused picketing leaving "open ample alternative channels of communication . . . ." <u>Id.</u> at 488. As did the Brookfield ordinance, the Fargo ordinance allows picketers to protest through neighborhoods, walk a route in front of a group of homes, and contact residents by telephone or in person with literature. See <u>id.</u> at 482-84.

---

[5]Our conclusion that Fargo's 1985 residential picketing ordinance constitutes a content-neutral regulation is amply supported by decisions of the Supreme Court and the Eighth Circuit. See <u>Frisby v. Schultz</u>, 487 U.S. 474 (1988); <u>Carey v. Brown</u>, 447 U.S. 455 (1980) (picketing ordinance not facially neutral because a provision specifically excluded labor picketing); <u>United States v. Dinwiddie</u>, 76 F.3d 913, 923 (8th Cir. 1996) ("FACE's [Freedom of Access to Clinic Entrances Act of 1994] motive requirement does not discriminate against speech or conduct that expresses an abortion-related message. FACE would, for example, apply to anyone who blockades a clinic to prevent a woman from getting an abortion, regardless of the message expressed by the blockade."); <u>Douglas v. Brownell</u>, 88 F.3d 1511 (8th Cir. 1996) (concluding residential picketing ordinance was constitutional under <u>Frisby</u> as a content-neutral ban limited to focused picketing in three-house zone.).

Fargo's ordinance also is narrowly tailored to address only the "evil" of targeted picketing of a particular resident. See id. at 487. That "evil" forces a resident to be "figuratively, and perhaps literally, trapped within the home, and because of the unique and subtle impact of such picketing [leaves the resident] with no ready means of avoiding the unwanted speech." Id. Thus, under Frisby, Fargo's 1985 picketing ordinance constitutes a valid content-neutral regulation of speech to preserve home tranquility and privacy by regulating focused picketing.

The picketers argue that the district court's decision, the jury award of damages and the award of attorney fees can be affirmed on alternative grounds. However, the picketers' constitutional challenges of overbreadth and vagueness also fail under Frisby. See Frisby, 487 U.S. 474. Adding the definitions of "dwelling" and "picketing" does not make the ordinance overbroad or vague.

The ordinance is not overbroad for the same reasons that the residential picketing ordinance is narrowly tailored. "A statute is unconstitutionally overbroad if 'it reaches a substantial number of impermissible applications.'" Dinwiddie, 76 F.3d at 924 (quoting New York v. Ferber, 458 U.S. 747, 771 (1982)). Fargo's residential picketing ordinance allows picketers to engage in neighborhood picketing including picketing across the street from the targeted resident. The activity proscribed is the very narrow range of activity -- focused picketing directed at "an occupant." The picketers' message can be expressed in many alternative forms making the ordinance not overbroad.

The picketers also contend that the ordinance is vague because it lacks standards and vests too much discretion in the officers enforcing the ordinance.[6] In order "[t]o 'survive a vagueness challenge, [an ordinance] must give the person of ordinary

---

[6]In particular, the picketers claim that the ordinance may include walking silently without signs which would allow for standardless discretion in the police applying the statute. We have already rejected the argument that silent prayer in front of a person's home does not amount to picketing. See Douglas, 88 F.3d at 1521.

intelligence a reasonable opportunity to know what is prohibited and provide explicit standards for those who apply [the ordinance].'" Dinwiddie, 76 F.3d at 924 (quoting Video Software Dealers Ass'n v. Webster, 968 F.2d 684, 689 (8th Cir. 1992)) (internal quotation omitted). We conclude that Fargo's ordinance, with its clear definitions of both dwelling and picketing, places people of ordinary intelligence on notice of what conduct the ordinance regulates. [7] The ordinance and case law provide the police with explicit standards. Thus, Fargo's ordinance is not vague.

Lastly, the picketers argue that the ordinance was unconstitutional as applied to them. This argument fails because this court held in this case's first appeal, Veneklase I, that the police officers who arrested the picketers acted in an "objectively reasonable" manner. 78 F.3d at 1269. In that case, the court concluded that when "at least one protester remains in front of the targeted residence at all times, the fact that other protesters march in front of several houses adjacent to the targeted dwelling does not diminish the 'focused' character of the picketing." Id. at 1268. Under Frisby, the picketers had no constitutional right to engage in focused picketing of a particular occupant. See Frisby, 487 U.S. 474. Therefore, Fargo applied its ordinance in a constitutional manner on October 10, 1991.

### III. ADDITIONAL COMMENTARY

We begin these comments by examining the term "picketing." We compare the term as contained in the Fargo ordinance with the term "picketing" as used in the

---

[7]We note that Kirkeby II did conclude that the definition of picketing in that case was unconstitutionally vague. Judge Gibson, however, indicates in his dissent in Kirkeby II that the majority's vagueness discussion constitutes dicta. Kirkeby II, 92 F.3d at 662-63 (Gibson, J., J., dissenting). Regardless of whether the discussion of the issue by the majority in Kirkeby II qualifies as dicta, the vagueness challenge in this case is without merit in the context of targeted residential picketing of an occupant. The picketing definition has a clear meaning. A protestor targeting the occupant of a residence by picketing the occupant's dwelling knows what he or she is doing and that such conduct violates Fargo's ordinance.

Brookfield, Wisconsin ordinance at issue in Frisby v. Schultz, 487 U.S. 474 (1988). The Brookfield ordinance made it "'unlawful for any person to engage in picketing before or about the residence or dwelling of any individual . . .'" Id. at 477. The ordinance recited the primary purpose of the ban: "'the protection and preservation of the home' through assurance 'that members of the community enjoy in their homes and dwellings a feeling of well-being, tranquility, and privacy.'" Id. at 477.

The language of the Fargo ordinance is substantially the same as the Brookfield ordinance in Frisby. The Fargo ordinance provides that "[n]o person shall engage in picketing the dwelling of any individual in the City of Fargo." Jt. App. at 7. The preceding section of the Fargo ordinance defines "picketing" as "the practice of standing, marching, or patrolling by one or more persons inside of, in front, or about any premises for the purpose of persuading an occupant of such premises or to protest some action, attitude or belief." Jt. App. at 7.

The appellees have not drawn any particular distinction between the ordinance in Frisby and the Fargo ordinance. Indeed, an examination of Frisby demonstrates that the term picketing includes all of the conduct that is defined by the Fargo ordinance and even more. We quote from portions of the Frisby case:

> As JUSTICE WHITE'S concurrence recounts, the lower courts described the ordinance as banning "all picketing in residential areas." . . . But these general descriptions do not address the exact scope of the ordinance and are in no way inconsistent with our reading of its text. "Picketing," after all, is defined as posting at a particular place, see Webster's Third New International Dictionary 1710 (1981), a characterization in line with viewing the ordinance as limited to activity focused on a single residence.

Frisby, 487 U.S. at 482 (citation omitted).

Thus, generally speaking, "picketing would be having the picket proceed on a definite course or route in front of a home." Tr. of Oral Arg. 8. The picket need not be carrying a sign, id., at 14, but in order to fall within the scope of the ordinance the picketing must be directed at a single residence, id., at 9. General marching through residential neighborhoods, or even walking a route in front of an entire block of houses, is not prohibited by this ordinance. Id., at 15. Accordingly, we construe the ban to be a limited one; only focused picketing taking place solely in front of a particular residence is prohibited.

Id. at 483.

The type of focused picketing prohibited by the Brookfield ordinance is fundamentally different from more generally directed means of communication that may not be completely banned in residential areas. . . . Here, in contrast, the picketing is narrowly directed at the household, not the public. The type of picketers banned by the Brookfield ordinance generally do not seek to disseminate a message to the general public, but to intrude upon the targeted resident, and to do so in an especially offensive way. Moreover, even if some such picketers have a broader communicative purpose, their activity nonetheless inherently and offensively intrudes on residential privacy. The devastating effect of targeted picketing on the quiet enjoyment of the home is beyond doubt.

Id. at 486 (citations omitted).

The general term picketing in the Brookfield ordinance may carry a broader prohibition than that of Fargo's ordinance. Frisby focuses on "the evil" of targeted residential picketing as about "the very presence of an unwelcome visitor at the home." Id. at 487 (quoting Carey v. Brown, 447 U.S. 455, 478 (1980)). The Brookfield ordinance analyzed in Frisby covered all activities that come under the general term of picketing, with the possible exception that this ordinance may not apply to a home used as a place of business or to picketers present in a particular home by invitation of the

resident.  See id. at 488.  Clearly the specific conduct of picketing as defined in the Fargo ordinance falls well within the parameters of picketing as explained in Frisby.

The importance of protecting the home from focused picketing is emphasized by the following quotation from Justice Rehnquist's opinion in Carey:  "'To those inside . . . the home becomes something less than a home when and while the picketing . . . continue[s]. . . .  [the] tensions and pressures may be psychological not physical, but they are not, for that reason less inimical to family privacy and truly domestic tranquility.'"  Id. at 486 (Rehnquist, J., dissenting) (quoting Wauwatosa v. King, 182 N.W.2d 530, 537 (Wis. 1971)).[8]  Without a doubt, Frisby makes clear that picketing means conduct or speech that is intended to "protest" or "persuade" in the same manner as those words are expressed in the Fargo ordinance.[9]

---

[8]The general definition of picketing in the Brookfield ordinance would encompass all of the activity that the Fargo ordinance designates as the practice of standing, marching or patrolling. The addition of the term "for the purpose of persuading or to protest" is part and parcel of the very definition of picketing.

Black's Law Dictionary defines picketing as:

The demonstration by one or more persons outside a business or organization to protest the entity's activities or policies and to pressure the entity to meet the protesters' demands; esp., an employees' demonstration aimed at publicizing a labor dispute and influencing the public to withhold business from the employer.

Black's Law Dictionary 1167 (7th ed. 1999) (emphasis added).

[9]It is well to note also that the only question about content neutrality in Frisby was whether, despite its facial content neutrality, the Brookfield ordinance should be read as containing under state law an implied exception for labor picketing.  See Frisby, 487 U.S. at 481. The appellants in Frisby contended that the ordinance would thereby distinguish between prohibited and permitted speech on the basis of content.  The Supreme Court rejected this argument, accepting the interpretation of the state statute by the inferior federal courts.  See id. at 481-82.

-14-

We precisely follow the analysis in Frisby in distinguishing the present Fargo ordinance protecting the privacy of the home and limiting the scope of that protection to the target resident. As the Court stated in Frisby, "The type of focused picketing prohibited by the Brookfield ordinance is fundamentally different from more generally directed means of communication that may not be completely banned in residential areas." Id. at 486.

The appellees argue that Kirkeby II requires this court to hold that the ordinance here is content based because it is, for all practical purposes, the same ordinance as in Kirkeby II. We disagree. As we discuss in our opinion, the focus of the ordinance in Kirkeby II related to picketing that was intended to persuade the public. The Fargo ordinance at issue now does not apply to the public, but merely applies to focused picketing, i.e., picketing that targets one residence.

Further, because there are two separate ordinances at issue, we are not bound by the Kirkeby II panel's decision. As a general proposition, the principle of stare decisis is applicable only where facts in the two actions are the same. See United States v. Nolan, 136 F.3d 265, 269 (2d Cir. 1998). Under stare decisis rule, language and general expressions in a court's opinion should be limited to particular facts and issues involved and must be construed in light of issues presented. See Mutual Benefit Health & Accident Ass'n v. Bowman, 99 F.2d 856, 858 (8th Cir. 1938). The language of a court's opinion "should not be extended beyond that for any purpose of authority in another or different case." Id. In addition, a decision depending on its underlying facts is not necessarily controlling precedent under the doctrine of stare decisis as to subsequent analysis of the same question on different facts and different records. See Gately v. Commonwealth of Mass., 2 F.3d 1221, 1226 (1st Cir. 1993). "Stare decisis means that like facts will receive like treatment in a court of law." Flowers v. United States, 764 F.2d 759, 761 (11th Cir. 1985). The two ordinances apply to different situations, and because the underlying facts in each case are different, Kirkeby II does not bind us.

-15-

## IV. CONCLUSION

For the above reasons, we reverse the judgment of the district court and the award of costs and attorneys' fees. We hold that the 1985 Fargo residential picketing ordinance is constitutional, both on its face and as applied to the picketers. We remand this case to the district court to enter a judgment of dismissal of the action brought by plaintiffs against Fargo.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.