# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 98-2147

—————

Chris Veneklase, Paul B. Mehl,    *
Darold Larson, Nancy Emmel,    *
Jessica Uchtman,    *
   *
      Plaintiffs - Appellees,    *
   *
   *   Appeal from the United States
      v.    *   District Court for the District
   *   of North Dakota.
City of Fargo,    *
   *   [PUBLISHED]
      Defendant - Appellant.    *

—————

Submitted: October 6, 2000
Filed: February 13, 2001

—————

Before WOLLMAN, Chief Judge, BRIGHT, McMILLIAN, RICHARD S. ARNOLD, BOWMAN, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, MURPHY, and BYE, Circuit Judges.

—————

PER CURIAM.

This case has a lengthy, almost ten-year litigation history beginning when plaintiffs-appellees sued the City of Fargo, North Dakota and several police officers asserting that they were arrested in violation of their constitutional rights for alleged violation of Fargo's residential picketing ordinance. After extensive litigation before a magistrate judge in the district court and before panels of this court, plaintiffs-appellees obtained a judgment for damages against only the City of Fargo in the sum

of $2431, plus attorney's fees in excess of $52,000. The City appealed from the judgment, and this matter is now before the court en banc. We reverse and remand for entry of judgment of dismissal in favor of the City.

I.    BACKGROUND

The background and history of this litigation may be found in the panel opinion reversing the judgment after a rehearing by the panel. Veneklase v. City of Fargo, 200 F.3d 1111 (8th Cir. 1999) ("Veneklase II"), vacated by order granting reh'g en banc. As relevant, the opinion stated:

This case has an extensive, almost eight-year history. In Fargo, North Dakota, on October 10, 1991, at approximately 10:00 p.m., activists picketed the home of an abortion clinic administrator and one or two houses on either side of her home. The Fargo Police Department received a complaint about the residential picketing. Fargo police officers advised the picketers that their conduct violated Fargo's then applicable residential picketing ordinance.

Fargo's ordinance, enacted in 1985, reads as follows:

10-1201. Definitions. --For purposes of this article, certain words and phrases used herein are defined as follows:

A.    "Dwelling" means any structure or building, or dwelling unit within a building, which is used as a place of residence.

B.    "Picketing" means the practice of standing, marching, or patrolling by one or more

-2-

persons inside of, in front, or about any premises for the purpose of persuading an occupant of such premises or to protest some action, attitude or belief.

10-1202. Picketing of dwellings prohibited. --No person shall engage in picketing the dwelling of any individual in the City of Fargo.

. . . .

After the picketers refused to leave the scene, the Fargo police arrested the picketers and charged them with violating the ordinance. The Fargo police transported the plaintiffs to the Cass County Jail and held them overnight. The Fargo police detained plaintiff Uchtman, a minor at the time of her arrest, for only a few hours and released her to the custody of her parents. Fargo filed charges against plaintiffs Veneklase, Mehl, Larson and Emmel for violating the residential picketing ordinance. On February 18, 1992, Cass County Judge Frank L. Racek dismissed the charges against plaintiffs, deciding that the ordinance was constitutional on its face but unconstitutional as applied to the plaintiffs on October 10, 1991.

Plaintiffs subsequently filed this action, pursuant to 42 U.S.C. § 1983, against Fargo, Officer David Todd, Officer Jim Schalesky, Lieutenant Jon Holman, and Sergeant Wayne Jorgenson seeking redress for their arrest and incarceration. On February 17, 1995, a Magistrate Judge denied the individual police officers' claim of qualified immunity. The district court concluded that the officers' conduct was not "objectively reasonable" in light of clearly established law. The district court also concluded that Fargo failed to train its officers properly and, as a result, was "deliberately indifferent" to the rights of the picketers and liable for damages as a matter of law. Veneklase v. City of Fargo, 904 F.Supp. 1038, 1058 (D.N.D. 1995). In addition, the district court concluded that the ordinance did not violate the constitution on its face because the ordinance constituted a valid content-neutral regulation. Id.

at 1044-48.  Fargo and the police officers appealed to this court from the interlocutory order.  We reversed the denial of qualified immunity and held that the interlocutory appeal on the issue of municipal liability was not properly before the court.  Veneklase v. City of Fargo, 78 F.3d 1264, 1270 (8th Cir. 1996) ("Veneklase I").  We then remanded the case to the district court for further proceedings against Fargo.  Id.

On April 10, 1997, the district court determined that Fargo was liable as a matter of law and again granted summary judgment in favor of the plaintiffs.  The district court  concluded that the ordinance was unconstitutional as a content-based restriction on free speech.  The district court then referred the issue of damages to a jury for a trial.  That trial, held in August 1997, resulted in damages against Fargo in favor of the five plaintiffs . . . .

Id. at 1113-14 (footnotes omitted).

The panel considered the case twice.  Initially, it reversed in an opinion filed August 30, 1999.  On the plaintiffs' petition for rehearing, the panel vacated its initial opinion and granted a rehearing.  It did so to give the plaintiffs an opportunity to address further the panel's determination that the 1985 Fargo ordinance passed the test of content neutrality.  See Veneklase II, 200 F.3d at 1111, n*.

As noted, the award of damages by the district court rested on its determination that the enforcement of the Fargo ordinance in question violated the plaintiffs' constitutional rights as a content-based restriction of free speech.

The panel opinion rejected that ruling, determining that the 1985 Fargo ordinance in question passed the test of content neutrality and was not facially unconstitutional, relying for its ruling on the United States Supreme Court case of

Frisby v. Schultz, 487 U.S. 474 (1988). The panel also rejected other constitutional challenges to the arrests.

Plaintiffs-appellees petitioned for a rehearing en banc, asserting error in the panel's determination of content neutrality and disregard by the panel of an earlier Eighth Circuit decision relating to Fargo's amended 1993 residential picketing ordinance which maintained that similar, crucial language defining residential picketing was not content neutral. That earlier case cited by plaintiffs is Kirkeby v. Furness, 92 F.3d 655 (8th Cir. 1996) ("Kirkeby II").

The petition for rehearing did not raise as a basis for en banc consideration the issue of the liability of the City of Fargo for the unconstitutional enforcement of the ordinance. However, that ground exists in plaintiffs' initial briefs as an alternate ground for affirmance by the court.

We granted a rehearing en banc on February 16, 2000, and heard oral argument on April 11, 2000. On September 7, 2000, the court vacated the submission in order to permit Judge Kermit E. Bye to participate. Judge Bye joined the court on April 22, 2000, after the initial en banc submission. Pursuant to the Eighth Circuit's established procedures, an active judge joining the court after an en banc submission may participate in pending en banc cases. By an order dated September 7, 2000, the court vacated the prior en banc submission of April 11, directed resubmission to the en banc court without further oral argument and on the basis of the original and supplemental briefs. The order also requested additional simultaneous briefs by the parties on the following questions:

1.      Does the decision in <u>Hill v. Colorado</u>, 120 S.Ct. 2480 (2000), have any bearing on the question of the invalidity, facial or as-applied, of the 1985 Fargo ordinance at issue in this case.

2.      Whether the holding of <u>Frisby v. Schultz</u>, 487 U.S. 474 (1988), limits the 1985 ordinance's scope of picketing in front of only one house, or "[w]hether protestors may, consistent with the <u>Frisby</u> holding, include houses adjacent to the targeted dwelling on the picketing route."  See <u>Veneklase v. City of Fargo</u>, 78 F.3d 1264, 1268 (8th Cir. 1996).

8th Cir. Order, Sept. 7, 2000.


After careful review, we determine the plaintiffs' claim of facial unconstitutionality of the ordinance must be rejected.  The ordinance in question is content neutral, and not void for vagueness or overbreadth.  Further, based on the record of this case, applicable Supreme Court case law, the opinion of this court in the prior appeal (<u>Veneklase I</u>, 78 F.3d at 1269), and other Eighth Circuit precedents foreclose any affirmance on the alternative grounds argued by plaintiffs-appellees.


We essentially adopt the panel opinion in <u>Veneklase II</u>, 200 F.3d 1111, and expand its reasoning in light of the recently decided case of <u>Hill v. Colorado</u>, 120 S. Ct. 2480 (2000), by the United States Supreme Court.  The judgment of the district court, granting the plaintiffs' motion for summary judgment against the City and entering an order allowing damages and attorney's fees and costs against the City, will therefore be reversed.

II.    DISCUSSION

The essential facts were stated in Veneklase I which we quote:

> On the evening of October 10, 1991, plaintiffs engaged in a demonstration outside the administrator's residence.  They walked back and forth, in single file, on the sidewalk in front of the administrator's home, but their route included approximately two to three houses on either side of the administrator's residence.  In addition, one protester remained in front of the administrator's home at all times.  Plaintiffs remained silent and carried no signs.  In response to a complaint, the defendant officers arrived and informed the demonstrators that their actions violated the ordinance.  The officers thereafter arrested those persons who refused to leave (plaintiffs in this action, with the exception of one protester, a minor).  Although plaintiffs were charged with violating the ordinance, these charges were later dismissed by the county court judge.

Veneklase I, 78 F.3d at 1266 (footnote omitted), reh'g en banc denied, cert. denied, 519 U.S. 867 (1996).

As a preliminary observation, we note that courts have traditionally subjected restrictions on public issue picketing to careful scrutiny.  See, e.g., Boos v. Barry, 485 U.S. 312, 318 (1988); United States v. Grace, 461 U.S. 171 (1983); Carey v. Brown, 447 U.S. 455 (1980).  "Picketing" can include a wide variety of activities, including prayer.  Douglas v. Brownell, 88 F.3d 1511, 1521 (8th Cir. 1996).

"Ordinances represent a legislative choice regarding the promotion of particular societal interests."  Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 764 (1994). The ordinance before us restricts a manner of speech in residential streets, a

traditional public forum. Consequently, the ordinance is subject to the well-settled time, place, and manner test: the restriction must be content and viewpoint neutral, leave open ample alternative channels of communication, and be narrowly tailored to further a substantial governmental interest. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). See also Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) ("The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.") (upholding noise regulations).

A.      Content Neutrality

With that background, we address the first issue, content neutrality. The plaintiffs and the City agree that the constitutionality of the ordinance is determined by the Supreme Court's decisions in Hill v. Colorado, 120 S. Ct. 2480 (2000) and Frisby v. Schultz, 487 U.S. 474 (1988).

Whatever justification initially existed for granting an en banc consideration and for affirming the district court on the ground that the 1985 ordinance is unconstitutionally content-based no longer exists in light of Hill v. Colorado and this court's recent decision in Thorburn v. Austin, 231 F.3d 1114 (8th Cir. 2000).

In Hill, a Colorado statute made it unlawful in regulated areas of a health care facility to knowingly approach within eight feet of another person "for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person . . . ." Hill, 120 S. Ct. at 2484.

The Supreme Court reaffirmed that "government regulation of expressive activity is 'content neutral' if it is justified without reference to the content of regulated speech." Id. at 2491. The statute in Hill passed the content-neutrality test spelled out in Ward, 491 U.S. 781:

> The Colorado statute passes that test for three independent reasons. First, it is not a "regulation of speech." Rather, it is a regulation of the places where some speech may occur. Second, it was not adopted "because of disagreement with the message it conveys." This conclusion is supported not just by the Colorado courts' interpretation of legislative history, but more importantly by the State Supreme Court's unequivocal holding that the statute's "restrictions apply equally to all demonstrators, regardless of viewpoint, and the statutory language makes no reference to the content of the speech." Third, the State's interests in protecting access and privacy, and providing the police with clear guidelines, are unrelated to the content of the demonstrators' speech. As we have repeatedly explained, government regulation of expressive activity is "content neutral" if it is justified without reference to the content of regulated speech.

Hill, 120 S. Ct. at 2491 (footnote omitted).

Like Colorado's statute in Hill, Fargo's 1985 ordinance passes the test articulated in Ward. First, the ordinance's language, "No person shall engage in picketing the dwelling of any individual . . ." (emphasis added), regulates nothing other than the particular location of where one may picket. J.A. at 2.

Second, the ordinance does not speak to which types of picketing are prohibited. Rather, it bans all picketing. It therefore cannot be said that the ordinance was adopted because of any disagreement with the message conveyed by the picketers. The preamble to the ordinance, evincing its purpose, references

concerns about "the protection and preservation of the home." J.A. at 1. It states that the "public health and welfare" require that "citizens enjoy a feeling of well-being and tranquillity while in their homes"; "the practice of picketing before . . . dwellings causes emotional disturbance and distress to the occupants." Id. There is no indication anywhere in the record that the ordinance was adopted because of any disagreement with certain messages.

Third, there is every indication that the City attempted to protect its citizens from unwanted speech, whatever the message, into their homes. The Supreme Court repeatedly has held that the government may protect an individual's right to be free from unwanted speech in the home. See, e.g., Frisby, 487 U.S. at 484-85; Carey v. Brown, 447 U.S. at 471; FCC v. Pacifica Found., 438 U.S. 726, 748-49 (1978); Rowan v. Post Office Dep't, 397 U.S. 728, 738 (1970); Kovacs v. Cooper, 336 U.S. 77, 86-87 (1949). In this case, the City's interest of protecting the privacy of the home is unrelated to the content of the plaintiffs' speech. Thus, the ordinance here clearly passes the content-neutrality test of Ward and Hill.

Turning again to the Colorado statute, in addition to finding that it passed the Ward test, the Court specifically rejected a similar argument that the plaintiffs made here, one that the panel majority espoused in Kirkeby II, 92 F.3d 655 (8th Cir. 1996). In Kirkeby II, the panel held the definition of picketing contained in Fargo's 1993 residential picketing ordinance to be content-based. The ordinance defined picketing as activity engaged in "for the purpose of persuading the public or an occupant of such premises or to protest some action, attitude or belief." Kirkeby II, 92 F.3d at 659. Because it was impossible to tell whether a person was engaged in picketing without analyzing the message, the court reasoned that the limitation was not justified without reference to content. Hill rejected that analysis.

According to the Court's opinion in Hill, the necessity of looking at the content of a speaker's message to determine whether it was protest, education, or counseling is no different from determining whether particular conduct constitutes picketing. See Hill, 120 S. Ct. at 2492. Picketing, by definition, excludes "social, random, or other everyday communications," but the Court has "never suggested that the kind of cursory examination that might be required to exclude casual conversation from the coverage of a regulation of picketing would be problematic." Id.

Even Justice Kennedy, in his dissent, appears to agree that "[n]o examination of the content of a speaker's message is required to determine whether an individual is picketing," even though the provision relating to protest, education, or counseling is different, and, in Justice Kennedy's view, runs afoul of content neutrality, even if picketing does not. Id. at 2516 (Kennedy, J., dissenting).

We reject the argument that because an inquiry might be necessary to determine whether a person is picketing, the ordinance therefore is content-based. As Hill reasons, the "cursory examination" to determine if one is picketing does not make the law content-based. Id. at 2492. Further, a panel of this court in Thorburn v. Austin, 231 F.3d 1114 (8th Cir. 2000), ruled that Kirkeby II, 92 F.3d 655 (8th Cir. 1996), could not be relied upon to establish that the language in the Fargo ordinance "for the purpose of persuading" was content based, rather than content neutral. Thorburn construed a somewhat similar ordinance prohibiting focused residential picketing in Lincoln, Nebraska:

> The appellants rely on Kirkeby v. Furness, 92 F.3d 655 (8th Cir. 1996), where we held the definition of picketing contained in a residential picketing ordinance to be content-based. The ordinance defined picketing as activity engaged in "for the purpose of persuading the public or an occupant of such premises or to protest some action,

attitude or belief." Id. at 659. Because it was impossible to tell whether a person is engaged in picketing without analyzing his message, we held that the limitation was not justified without reference to content. See id. Hill rejected this sort of analysis.

According to the Court's opinion in Hill, the necessity of looking at the content of a speaker's message to determine whether it was protest, education, or counseling is no different from determining whether particular conduct constitutes picketing. See --- U.S. at ---, 120 S. Ct. at 2492. Picketing, by definition, excludes "social, random, or other everyday communications," but the Court has "never suggested that the kind of cursory examination that might be required to exclude casual conversation from the coverage of a regulation of picketing would be problematic." Id. Engaging in demonstrations and attempting to influence opinions are inherent in picketing. Hill requires that we reject the appellants' argument that Casady's definition of picketing makes the Lincoln ordinance content-based.

Thorburn, 231 F.3d at 1118.

Hill also relies on Frisby as establishing the content neutrality of the Colorado statute, emphasizing "the contention that a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of the partisans on one side of a debate is without support." Hill, 120 S. Ct. at 2494.

In sum, Hill and Frisby foreclose a conclusion that Fargo's 1985 ordinance is unconstitutional on its face for lack of content neutrality. The laws upheld in Frisby and Hill, and recently by this court in Thorburn, while respecting free speech rights, recognize that in limited circumstances the specific target of that speech is entitled to some protection from being forced to listen. This ordinance clearly falls into that category. This issue of content neutrality was the only issue decided in favor of the plaintiffs.

Having concluded the ordinance is content-neutral, we must determine whether it is narrowly tailored to serve a significant government interest and whether it preserves ample alternative channels of communication. Because the picketing prohibited by the ordinance is speech directed not to the general public but primarily at those who are presumptively unwilling to receive it, the City has a substantial and justifiable interest in banning it. The nature and scope of this interest make the ban narrowly tailored. The ordinance also leaves open ample alternative channels of communication. Thus, we reverse the determination of the district court.

B. Vagueness and Overbreadth

The prior panel opinion in this case also addressed and rejected other assertions of the ordinance's facial unconstitutionality, specifically vagueness and overbreadth. In doing so, the panel relied on Frisby and stated that the Fargo ordinance adding the definitions of "dwelling" and "picketing" to the ordinance at issue in Frisby did not make the ordinance overbroad or vague. Veneklase II, 200 F.3d at 1117; cf. Hill, 120 S. Ct. at 2492 (noting that "picket" is defined to mean "persuade or otherwise influence"); Thorburn (stating that "[p]erhaps the ordinance could have been more exact, but the fact that questions may arise regarding its applicability to certain conduct does not automatically lead to the conclusion that it is void for vagueness"), 231 F.3d at 1121.

The ordinance provides fair warning of the conduct that is prohibited. A person of ordinary intelligence can conclude that if he or she stands, marches, or patrols inside of, in front of, or about any dwelling of the person he or she intends to target, directing the picketing at that person, the picketer is subject to prosecution under the Fargo ordinance.

-13-

Furthermore, the Fargo ordinance does not leave those who are enforcing it with unfettered discretion to determine whether a violation has occurred. As Thorburn stated relative to a similar ordinance, "[p]olice officers will have to use discretion to determine whether an activity is picketing and whether it is focused, but enforcement of all laws involves some discretion." Thorburn, 231 F.3d at 1121. Because there is no real risk of discriminatory enforcement and because the ordinance makes clear what conduct it prohibits, we hold that it is not unconstitutionally vague.

For us to find a statute unconstitutionally overbroad, its "overbreadth . . . must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973). This court held recently that "[p]rohibiting focused residential picketing is plainly legitimate." Thorburn, 231 F.3d at 1121. Here, an individual engaged in an activity that is directed at a specific occupant of a dwelling falls within the legitimate sweep of the ordinance.

Hill also strongly supports the rejection of plaintiffs' alternative theories of constitutional imperfection in the Fargo ordinance. The Court in Hill determined that the Colorado statute, significantly restrictive of speech, nevertheless was narrowly tailored, see Hill, 120 S. Ct. at 2494-97, and that the statute was neither overbroad nor unconstitutionally vague. See id. at 2498-99.

Accordingly, no basis exists for affirmance on plaintiffs' alternative constitutional theories.

-14-

C.     Other Grounds for Affirmance

While the petition for rehearing did not raise the issue of an unconstitutional application of the ordinance, it was briefed in the plaintiffs' initial brief and argued briefly to the en banc court.  Plaintiffs-appellees contend that the City should be responsible for any arrests made by police officers who, plaintiffs say, arrested them outside the parameters set out in Frisby.  In short, plaintiffs claim that they did not violate the ordinance and they maintain that the arrests occurred pursuant to city policy, and, thus, the ordinance was unconstitutionally applied to them.

In our view, the "as-applied" issues were previously decided against plaintiffs by the district court after remand from Veneklase I and the contentions advanced on these issues do not justify an affirmance here on these alternative grounds.  The "as-applied" argument fails because this court held in the first appeal, Veneklase I, "that the arrest of plaintiffs by the defendant officers was objectively reasonable in light of the legal rules in existence at the time the action occurred."  Veneklase I, 78 F.3d at 1269.[1]  This ruling became the law of the case.

Further, assuming, *arguendo,* that the arrests were unconstitutionally made, it would be necessary to show that the City had (a) a policy or custom directly authorizing conduct contravening federal and state constitutions and law; or (b) deficient police training.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989)

---

[1]The opinion in Veneklase I commented on the contours of Frisby stating, "Whether protesters may, consistent with the Frisby holding, include houses adjacent to the targeted dwelling on the picketing route, is an issue which we need not resolve today, yet it is a significant question which lingers after Frisby.  Thus, upon a careful reading of Frisby, we do not find that its holding defined the outer parameters of 'focused' residential picketing.  We hold that plaintiffs did not have a clearly established right on October 10, 1991, to picket in a route encompassing the Bovard residence and the two to three homes on either side of it."  Veneklase I, 78 F.3d at 1268-69 (footnote omitted).

-15-

(determining that municipality may be held liable only for constitutional violations which result from municipal policy or custom). However, the district court rejected any liability against the City on this ground.

Regarding policy or custom, no evidence exists in the record that the City followed a custom of having its police officers arrest picketers who were not in violation of the law. The magistrate judge determined that the City did not have a policy or custom of unconstitutionally applying the ordinance. See Veneklase, 904 F. Supp. at 1056 & n.16. The magistrate judge did observe that the City police chief had admitted during discovery that the arresting police officers acted pursuant to existing policies and training, none of which specifically addressed the enforcement of the antipicketing ordinance or the implications of Frisby. Id. at n.16. However, since "admissions are not the equivalent of an affirmative decision, cast in the form of a policy statement, . . ." the district court concluded that "municipal liability premised on a ratification theory does not flow from the City's admissions." Id.

Regarding deficient police training, no liability can flow from the alleged failure to train the Fargo police officers. This issue has been adequately laid to rest in the district court's opinion in this case:

> In light of the Eighth Circuit's ruling [Veneklase I] that the law regarding the parameters of the First Amendment right to protest against abortion in a residential area was not clearly established at the time of plaintiffs' arrest, the City's failure to its train [sic] police officers could not serve as the moving force behind the violation of plaintiffs' First Amendment rights. Since the parameters of plaintiffs' First Amendment rights were still in question, any training of the City's police officers would necessarily leave those parameters in doubt. Consequently, the lack of training by the City cannot be the moving force behind the violation of plaintiffs' constitutional rights.

-16-

J.A. at 252, Dist. Ct. Mem. and Order, April 10, 1997.

Moreover, where arresting police officers are absolved of liability to arrestees, the City ordinarily is not liable. We have addressed this issue in two cases. In <u>Abbott v. City of Crocker, Mo.</u>, 30 F.3d 994 (8th Cir. 1994), we held that a judgment as a matter of law could not be sustained against a municipality where the judgment against the arresting officer had been reversed on a fact basis. The court stated:

> The City cannot be liable in connection with either the excessive force claim or the invalid arrest claim, whether on a failure to train theory or a municipal custom or policy theory, unless Officer Stone is found liable on the underlying substantive claim. <u>See</u> <u>Reynolds v. City of Little Rock</u>, 893 F.2d 1004, 1007 (8th Cir. 1990), quoting <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986). For this reason, where appellee was not entitled to JAML against the police officer, the grant of JAML against the City was also erroneous.

<u>Id.</u> at 998.

More recently, we reaffirmed <u>Abbott</u> in <u>Olinger v. Larson</u>, 134 F.3d 1362 (8th Cir. 1998). There the plaintiff filed a civil rights action against the arresting officer, the chief of police, and the City of Sioux Falls claiming a violation of constitutional rights stemming from the plaintiff's arrest. The district court initially granted summary judgment dismissing the case against the arresting officer but not dismissing the chief of police and the City because of evidence suggesting a failure to train. Later, the district court entered a new order granting a summary judgment of dismissal on all claims. We affirmed, stating:

> In light of our rulings that Detective Larson and Chief Satterlee did not violate Olinger's fourth amendment rights, Olinger's claims

-17-

against the City based on its alleged inadequate training and supervision of Detective Larson and Chief Satterlee, must also fail. See Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994) ("The City cannot be liable . . . whether on a failure to train theory or a municipal custom or policy theory, unless [an officer] is found liable on the underlying substantive claim").

Id. at 1367.

In the absence of a record establishing an illegal arrest, in the circumstances as here where the arresting officers have been absolved of fault, the plaintiffs-appellees cannot present a tenable basis for affirmance of the judgment against the City on alternative grounds that the arresting officers unconstitutionally applied the ordinance in question.

No basis exists for affirmance on alternative grounds argued by plaintiffs-appellees.

III.   CONCLUSION

The judgment against the City of Fargo for damages and assessment of attorney's fees is REVERSED. No costs are awarded on appeal.

RICHARD S. ARNOLD, Circuit Judge, joined by WOLLMAN, Chief Judge, BOWMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges, dissenting.

Most of the Court's opinion goes to establish the proposition that the Fargo ordinance was content neutral. I do not contest this point. It does not follow,

-18-

however, that the judgment of the District Court should be reversed. There are at least two closely related alternative grounds for affirmance: that the ordinance was unconstitutionally overbroad, and that it was not narrowly tailored to a substantial state end. Because I believe that both of these grounds have merit, I respectfully dissent.

## I.

The question of overbreadth turns on whether the Fargo ordinance exceeds its constitutional limits in a way that "may cause others not before the court to refrain from constitutionally protected speech or expression," Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973), and whether its overreaching is "not only . . . real, but substantial as well, judged in relation to [its] plainly legitimate sweep." Id. at 615.

In rejecting the plaintiffs' overbreadth claim, the Court relies on the statement of the panel in Thorburn v. Austin, 231 F.3d 1114 (8th Cir. 2000), that "[p]rohibiting focused residential picketing is plainly legitimate." This categorical statement, by itself, establishes very little. The plaintiffs are not claiming that they have a constitutional right to engage in "focused residential picketing." They couldn't, because the Frisby case establishes the contrary. What the plaintiffs do claim is that the Fargo ordinance under which they were arrested encompassed a range of conduct that includes substantially more than just the "focused" or "targeted" residential picketing addressed in Frisby. The most important part of the Court's overbreadth analysis, therefore, is its assertion that "an individual engaged in an activity that is directed at a specific occupant of a dwelling falls within the legitimate sweep of the ordinance." Ante, at 14. This amounts to a holding that picketing is "focused" or

-19-

"targeted," for Frisby purposes, whenever it is "directed at a specific occupant of a building."

There are two significant problems with this holding. First, it is ambiguous. Because picketing is "a mixture of conduct and communication," NLRB v. Retail Store Employees, 447 U.S. 607, 619 (1980) (Stevens, J., concurring in part and concurring in result), it may be "directed at a specific occupant" in different ways. The picketers may intend the occupant to be the primary recipient of their message, or they may "direct" their picketing towards the occupant in a physical sense. The distinction makes a difference. The ordinance at issue here prohibits "picketing of dwellings," where "picketing" is defined as

> the practice of standing, marching or patrolling by one or more persons inside of, in front, or about any premises for the purpose of persuading an occupant of such premises or to protest some action, attitude, or belief.

As the plaintiffs point out, this definition extends both to protected conduct – marching that is not physically "focused" on a particular residence within the meaning of Frisby – and to protected speech – messages that are intended, not only for the occupant of the house, but for the public at large. The Court rejects both of these arguments without clearly addressing either one.

This brings me to the second problem: Frisby does not say that picketers lose the shelter of the First Amendment whenever their activity is "directed at a specific occupant of a building," whether as speech or as conduct. Its holding is narrower. In Frisby, the Supreme Court was faced with an ordinance that the two lower federal courts had held to be illegally restrictive of constitutionally protected speech. In order to avoid "constitutional difficulties," 487 U.S. at 483, the Court construed the

-20-

ordinance as prohibiting "only focused picketing taking place <u>solely</u> in front of a particular residence." <u>Id.</u> (emphasis mine). So construed, the ordinance was upheld. See <u>id.</u> at 488 ("largely because of its narrow scope, the facial challenge to the ordinance must fail"). Although the picketing in <u>Frisby</u> took place in a public forum, <u>id.</u> at 481, its message was forced on an unwilling recipient in the privacy of the home. The Court held that, in that respect, the activity prohibited by the ordinance resembled an offensive radio broadcast, offensive matter sent through the mails, or an offensive speech blared from a sound truck, more closely than it did such protected activities as marching, see <u>Gregory v. City of Chicago</u>, 394 U.S. at 111 (1968), or distributing leaflets door-to-door, see <u>Schneider v. State</u>, 308 U.S. 147 (1939). <u>Frisby</u>, 487 U.S. at 485. To the extent that the "plainly legitimate sweep" of a picketing restriction depends upon <u>Frisby</u>, it could extend only to picketing that takes place "solely in front of a particular residence," <u>id.</u> at 483, and functions primarily "to force speech into the home of an unwilling listener." <u>Id.</u> at 485. Any broader restriction is not "plainly legitimate" and may be unconstitutional. The remaining question is whether the overbreadth – the range of protected speech the ordinance purports to prohibit – is substantial.

What kinds of activity does the Fargo ordinance attempt to reach?[2]  In determining the breadth of the ordinance before it, the Frisby Court relied on the town attorney's insistence that his town's ordinance would not be enforced in a variety of probably unconstitutional ways, even though its plain language suggested that it could be.  487 U.S. at 483.  In this case, the plaintiffs' attorney asked Fargo Police Chief Ronald Raftevold whether probable cause for arrest would exist if a person holding a picket sign walked up and down a residential street extending for several city blocks, in front of thirty houses, in order to persuade not only a specific resident of the street but also the neighborhood in general.  Consider the exchange that followed:

A.    In front of his dwelling was the words you used?

Q.    In front of thirty dwellings.  He goes back and forth in front of thirty dwellings but he only knows one person who lives in one of those dwellings and his message is very much directed at that person and to all the neighbors.

---

[2]The Court focuses on the circumstances under which the ordinance was applied, apparently taking the view that the plaintiffs' overbreadth claim must fail as long as the city could constitutionally prohibit the kind of conduct for which the plaintiffs were actually arrested.  That is incorrect.  The plaintiffs claim that the ordinance was overbroad on its face, not merely as applied to them.  In evaluating the facial challenge, we must look not only at how the ordinance has actually been enforced, but, more importantly, at what sort of enforcement it authorizes.  It is worth noting, however, that, according to the police incident reports, the plaintiffs were arrested for marching silently back and forth in front of a six-house group:  the Bovard residence, two houses on one side of it, and three on the other.  JA 189, 191, 194-95.  This fact by itself prevents us from saving the ordinance by adopting a construction as narrow as the one in Frisby.

A.     I would say there was probable cause that he was in violation of that ordinance.

Q.     Okay. And if we expand that same fact from thirty to a hundred houses . . . would that change the applicability of the ordinance?

A.     I don't believe so.

Q.     Okay. And your police force was authorized to enforce it that way.

A.     They were authorized to enforce it if they had probable cause to believe that that ordinance was being violated.

Q.     On the hypotheticals I just gave you you felt there was probable cause in those cases of thirty houses and a hundred houses so long as the picketing intent and to persuade and to protest one person there was present.

       MR. MILLER: Asked and answered, Counsel.

JA 243-45.

Chief Raftevold's interpretation submerges the Fargo ordinance in the very same "constitutional difficulties" that the Frisby court sought to escape by holding that the ordinance in that case extended to "picketing . . . directed at a single residence," but not to "[g]eneral marching through residential neighborhoods, or even walking a route in front of an entire block of houses . . . ." Frisby, 487 U.S. at 483. Even at the time of Frisby, Justice White's concurring opinion suggested that without the saving grace of that interpretation, the ordinance in Frisby would have been overbroad. Id. at 491 (White, J., concurring in judgment). Since then, the Madsen

-23-

case has made clear that <u>Frisby</u> cannot be interpreted to justify a 300-foot "buffer zone." See <u>Madsen</u>, <u>supra</u>, 512 U.S. at 774-75; see also <u>Lucero v. Trosch</u>, 121 F.3d 591, 606 (11th Cir. 1997) (striking down 200-foot residential buffer zone; stating that "the Court's discussion [in <u>Madsen</u>] makes clear that its precedents support restriction of targeted picketing rather than a generalized restriction").

In our case, the City of Fargo claims that its picketing ordinance was modeled on the one in <u>Frisby</u>. Its plain language casts at least as wide a net. The difference, however, is that Fargo's ordinance cannot be saved by a narrowing construction. As it was interpreted by the leading city official charged with its enforcement, the ordinance reached substantially beyond the "plainly legitimate scope" established in <u>Frisby</u>. Accordingly, I would hold that it was facially overbroad.

II.

For some of the same reasons, the ordinance was not narrowly tailored to a significant governmental interest. It is true that the state's interest in protecting residential privacy is significant. <u>Frisby</u> shows that. <u>Id.</u> at 484. But <u>Frisby</u> also establishes that a complete ban on a species of communication "can be narrowly tailored . . . only if each activity within the proscription's scope is an appropriately targeted evil." <u>Id.</u> at 485. If the First Amendment permits a city to criminalize marching up and down a residential street, with persuasive intent, in front of thirty or even a hundred houses, provided only that the picket goes past one targeted residence in the course of the march, then it is hard to imagine what kind of "constitutional difficulties" the <u>Frisby</u> Court could have had in mind. In addition, the actual application of the ordinance here – to picketing in front of six houses, according to the Fargo police themselves – plainly went beyond <u>Frisby</u>'s reference to "picketing taking place solely in front of a particular residence . . .." 487 U.S. at 483.

-24-

The Frisby Court's interpretation, unavailable here, was necessary to its holding on the issue of narrow tailoring. Because we cannot adopt such an interpretation, we should reach the contrary result.

In addition to Frisby, the Court claims that Hill v. Colorado, 120 S. Ct. 2480 (2000), "strongly supports the rejection of plaintiffs' alternative theories of constitutional imperfection in the Fargo ordinance." This claim adds nothing to the argument. Hill dealt with a statute that marked off an eight-foot area around anyone in a public right-of-way within 100 feet of a health-care facility. The statute made it a misdemeanor knowingly to enter that area, without the person's consent, in order to protest, counsel, educate, or hand out pamphlets. Hill, 120 S. Ct. at 2484 n.1. An eight-foot zone around a person's body is manifestly different from a zone of one hundred, thirty, or even five houses around a residence. In case this should be in doubt, the Hill Court explicitly stated that the Colorado ordinance "interfere[d] far less with a speaker's ability to communicate than did the total ban on picketing on the sidewalk outside a residence (upheld in Frisby v. Schultz) . . .." Id. at 2497. If Frisby does not help Fargo, neither can Hill.

III.

I believe the City is liable here. The ordinance is invalid on its face. A municipality faced with a § 1983 action cannot plead qualified or absolute immunity, nor is the good faith of its officers a sufficient defense. See Owen v. City of Independence, Missouri, 445 U.S. 622, 638 (1980). A city is liable for damages under § 1983 if its officers deprive someone of liberty pursuant to a facially unconstitutional municipal ordinance. See, e.g., Douglas v. Brownell, 88 F.3d 1511

-25-

(8th Cir. 1996) (denial of parade permit pursuant to overbroad permit ordinance); <u>Gerritsen v. City of Los Angeles</u>, 994 F.2d 570 (9th Cir. 1993) (arrest pursuant to overbroad prohibition on demonstrating in a public park without a permit).  The Fargo police did just that.

I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.