SMITH, Circuit Judge,
concurring.
I concur in the majority’s holdings that (1) the Phelps-Ropers have standing to challenge the current ordinance, supra Part II.B.; (2) “[t]he Phelps-Roper challenges to the two earlier versions of the ordinance are moot,” supra Part II.B.; (3) “Manchester’s ordinance is content neutral,” supra Part Part II.C.; and (4) “intermediate scrutiny is the appropriate standard for examination of the First Amendment issues raised here,” supra Part II.C. I also concur in the court’s holding that Manchester’s ordinance is a constitutionally valid time, place, and manner regulation. Supra Part III. I write separately to express concern about the extension of the unique protection afforded the sanctuary of the home to funerals and burials. Manchester states a “significant” interest, but the question is close and the grade on this slope should not be seen as having been greased.
“A content-neutral time, place and manner regulation may be imposed in a public forum if it: (1) serves a significant government interest; (2) is narrowly tailored; and (3) leaves open ample alternative channels of communication.” Nixon, 545 F.3d at 691 (citing Ward, 491 U.S. at 791, 109 S.Ct. 2746; Veneklase v. City of Fargo, 248 F.3d 738, 744 (8th Cir.2001) (en banc)).
In its opening brief, Manchester asserts a “significant interest in protecting its citizens from the psychological harm that results from outside interference in the grieving process.” (Emphasis added.) It later states that “[t]he death of a loved one places great strains on the bereaved, affecting their emotions, often their finances, and even their physical health.” (Emphasis added.) In its reply brief, Manchester contends that “[t]he driving force behind [its] ordinance is the need to protect the dignity that is inherent in funerals in our society, a dignity which inures to the physical and psychological benefit of the family of the deceased.” (Emphasis added.)
In Madsen, the Supreme Court found a “combination of ... governmental interests” that justified the injunction prohibiting certain picketing and noise near abortion clinics. 512 U.S. at 768, 114 S.Ct. 2516. These interests included “a strong interest in protecting a woman’s freedom to seek lawful medical or counseling services in connection with her pregnancy”; “a strong interest in ensuring the public safety and order, in promoting the free flow of traffic on public streets and sidewalks, and in protecting the property rights of all its citizens”; and a “strong interest in residential privacy, acknowledged in Frisby ..., applied by analogy to medical privacy.” Id. at 767-68, 114 S.Ct. 2516. The Supreme Court indicated that it was a combination of both potential psychological and physical harm that defined the significant government interest. See *697 id. at 768, 114 S.Ct. 2516. Specifically, the Court agreed that “while targeted picketing of the home threatens the psychological well-being of the ‘captive’ resident, targeted picketing of a hospital or clinic threatens not only the psychological, but also the physical, well-being of the patient held ‘captive’ by medical circumstance.” Id. (emphasis added).
And, the Hill Court, in clarifying that it was not determining “whether there is a ‘right’ to avoid unwelcome expression,” explained that
[t]he purpose of the Colorado statute is not to protect a potential listener from hearing a particular message. It is to protect those who seek medical treatment from the potential physical and emotional harm suffered when an unwelcome individual delivers a message (whatever its content) by physically approaching an individual at close range, i.e., within eight feet. In offering protection from that harm, while maintaining free access to health clinics, the State pursues interests constitutionally distinct from the freedom from unpopular speech to which Justice KENNEDY refers.
580 U.S. at 718 n. 25, 120 S.Ct. 2480 (emphases added). Thus, Hill clarifies that the valid governmental purpose in Hill was not “proteet[ing] a potential listener from hearing a particular message”; instead, the valid governmental purpose was in the joint interests of protecting persons “from the potential physical and emotional harm suffered when an unwelcome individual delivers a message ... by physically approaching an individual at close range.” Id. (emphasis added).
Because Manchester asserts the joint interests of protecting funeral attendees from psychological and physical harm, as in Madsen and Hill, I concur in the court’s conclusion that Manchester has a significant government interest in enacting the ordinance. See supra Part III.B.
But make no mistake, this court is extending the circumference of what this circuit has previously found constitutes a significant government interest. The uniqueness of the funeral assembly justifies it. We must be concerned, however, that few, if any, other places become walled off to the free expression of ideas due to their potential effect on the hearer. Nevertheless, given the special and unique place an individual’s funeral and burial hold in the lives of those touched by the deceased, the expansion is likely warranted. It is a journey taken only once. However, if government is enabled to restrict otherwise lawful speech for its emotional offensiveness alone, divorced from any potential physical harm, its ability to do so may not end with the case of understandably sympathetic mourners disturbed by zealous proclamations of disfavored groups. To keep the footing on this precedential slope sure, a significant government interest must not be diminished any more than these facts permit.